Good morning all. Our first case this morning is Lopez-Aguilar v. Marion County Sheriff's Department, the appeal of the State of Indiana. General Fisher. Thank you Judge Flanagan. May it please the court. This case started off as a garden variety unlawful detention damages case. But somehow it morphed into a sweeping consent decree that prohibits the Marion County Sheriff from cooperating with ICE detainers. The state should have been permitted to intervene for purposes of this appeal and the consent decree should be vacated because it is contrary to state law and because that state law is neither preempted by federal law nor invalid under the Fourth Amendment. First, with respect to the intervention question, the district court was bothered principally by two issues, standing and timelines. With respect to standing, our position is that as a sovereign, we have Article III injury when our laws are misinterpreted, misapplied, and unenforced. Just as in any case where a statute is called into question whether on constitutional grounds or otherwise, that injury is something that only the State of Indiana can advance. Mr. Fisher, isn't it the case that when the court has recognized standing in those instances, it's been when a statute was unconstitutional? Sure, but there's no principal distinction between a constitutional challenge and any kind of interpretation. The state suffers a sovereign injury when its statutes are unenforced. And indeed in Main v. Taylor, the court not only adjudicated a constitutional dispute, but it recognized the more general proposition that when a statute is at risk of being unenforceable, the state has that same sovereign injury. But is the statute unenforceable? I mean, the district court interpreted it to not apply, not to directly conflict with state law. I think it's impossible to unwind those two issues. I mean, really here, the interpretation and the enforceability are bound up together. And if we've got a position that the misinterpretation leads to unenforceability, I think we have Article III injury. Now, that is not the only question in all of these cases as to whether the state can intervene. But I think it certainly gets us over the Article III injury hurdle. How do you deal with the issue of redressability? You're the only appellant in the case. Well, if we prevail and the consent decree is vacated, the sheriff will once again be required to follow state law. And that is not simply an abstract proposition. There is a state statute that permits any citizen to file suit in an Indiana court to require the sheriff to cooperate with the federal government under that state law. So it's not simply an idle and abstract idea. The relief here will be meaningful for the state in terms of the enforcement of state law. Now, indeed, if Indiana is not permitted to intervene here for purposes of appeal, we have to think about what the consequences might be in terms of trying to get some other interpretation of state law. And this is something I think the district judge thought that perhaps might happen. There might be another court proceeding. And indeed, there are right now two court proceedings that have begun in state court. One has been removed to federal court, raising similar challenges to other cities' policies that would be contrary to state statute. But let's just think about what happens if those cases get adjudicated in favor of our position in terms of how state law should be interpreted. At the end of the day, we might have an Indiana Supreme Court judgment, for example, that holds that this sort of honoring of detainers is required pursuant to state law that could then be used to obtain a state trial court injunction against the Marion County Sheriff, which would then find itself in the position of having conflicting injunctions, one by way of this consent decree, one by way of a state court judgment. And is that really a situation that we want to invite, as opposed to permitting the state to intervene now to try to get a straightforward federal interpretation, adjudication of the statute that hopefully will be consistent with whatever happens with state law down the road? I don't think the state is, certainly as a matter of Article III, barred from trying to head off that kind of train wreck where you might have conflicting federal and state court injunctions. With respect to timeliness now, the district court initially said, in regard to the timing of our petition to intervene, and this was actually in response to our motion to extend the time to appeal, that the state was relatively blameless for creating the situation we found ourselves in. Yet, the court decided that the time for intervention should have been measured from the time the consent decree was proposed in July of 2017, as opposed to when the judgment was entered in November of 2017. But there's no reason for taxing the state with that time period between the two. We were never notified of the lawsuit until the Department of Justice notified us upon the entry of the consent decree. Somehow or another, they knew about it far in advance of your office. And I wish they'd told us about it earlier, quite frankly. But we didn't know about it until they told us about it once the consent decree was entered. Are you arguing that the district judge had an independent duty under the statute to tell you about this? I think so, but the question is when, right? I mean, if we look at the complaint, the complaint doesn't have anything in it that talks about a challenge to the enforceability, the interpretation of state law, constitutionality, any of that. When the consent decree was proposed, maybe it's not clear then. Now, the district court thought perhaps if we had seen the proposed consent decree, that might have put a duty on us and indeed measured the time from there. It's not obvious to me that even then the issues of state law were as crisp as they later became once the court started to dive into the proposed consent decree. Why is that? What was lacking in crispness until you actually saw the decree? Well, I think once the city raised the possibility that there might be some contravention of state law, and the district court began to dive into that in the analysis of the consent decree and then engaged both preemption and Fourth Amendment issues, which perhaps were not obvious on the surface of the proposed decree. At that point, I think there was a responsibility to notify us because certainly, I think, no matter how we look at it, the constitutionality of state statutes were being called into question. Now, that constitutionality sometimes will shape up as sort of a binary valid-invalid distinction. Here, perhaps that wasn't the issue, but it certainly was an issue with respect to interpretation. District courts will, as all judges are supposed to do, try to find ways to avoid constitutional issues if a reasonable statutory interpretation is available. Well, we think that if we'd been given the chance to argue about the constitutionality of the statute, the interpretation given to avoid those issues would not have been necessary. And in that circumstance, we should have been notified. We should have been invited in to provide briefing on the issue. Now, as it happens, the district court was able to understand the issues and know that they were there and go in and grapple with them, we think, in an erroneous way. But there was no reason for us to go in and ask for reconsideration because we already knew what the district court thought of the issues. And so our view is, fine, we just need to intervene for purposes of appeal to pursue these arguments down the road. General Fisher, may I go back to that redressability question I raised a little earlier? We do have at least two, perhaps three, cases in the circuit that basically say we will not give relief in a case where the party burdened by the injunction is not before the court. If we were to grant you relief, allow you to intervene, given the position of the other parties, how could the district court grant you meaningful relief? The district court doesn't need to grant us relief. The relief that we get is simply the vacatur of the injunction. If the injunction is vacated... So we could give you relief, is your point? Right. And that would be the end of it, from our perspective. But these cases seem to say we won't do that if we don't have the other parties before the court. But that's only where the consequence of vacating the relief would not actually change the circumstances on the ground, where there's some other authority. So your point is it's the relationship between your client, the state of Indiana, and the subordinate governmental unit, Marion County, that makes the difference from those cases, am I right? I think that's a substantial part of it. And at that point, if there were still any doubt about it, the separate statute that affords any citizen a right of action against the Marion County Sheriff's Department to enforce those statutes seals the deal. Because they have to obey state law as a matter of principle, but also as a matter of worrying about whether they're going to get sued if they don't. So if this consent decree is not in place, they have no excuse for not abiding by state law, and they can be called into state court if they don't. Thank you. So those, I think, are the main issues with respect to the intervention. And I do want to go ahead and address the scope of the injunction as it relates to Article III, because I think there's a separate Article III issue there. This case, again, started off as a damages action. It did not suggest that Mr. Lopez Aguilar, whether there was any reason to believe that he would find himself in this position again. This is a classic Los Angeles versus Lyons kind of scenario, where if there's essentially a one-off, an allegation of some kind of unlawful detention or unlawful police action, perhaps a damages remedy is appropriate. But unless there's some kind of systematic policy that this plaintiff will find himself in the middle of again, there's no grounds for an injunction. There's no grounds for this kind of sweeping relief. This court has upheld that principle many times, including this year in the Swanigan case. And it's really, I think, a critical piece of understanding why this case never should have been about this kind of consent decree in the first place. So I can't stress that enough in terms of where this case started, really, I think, to go off the rails. With respect to the state law and the statutes that we're talking about, we have a statute that plainly requires that local and other officials cooperate with the federal government when it comes to the identification, apprehension, detention, and removal of aliens. Now, we have the district court said, well, maybe that doesn't reach detainers, but wrap that into the preemption analysis relying on Arizona. And our position is all we're talking about here is when there is a specific request from the United States, from ICE, to detain somebody that's already in custody, that is not an Arizona-type situation. That is not unilateral state action. That is simply cooperating with a request from the United States. I think here, also, I want to again stress the difference between the facts of this case and the perhaps more typical or at least paradigmatic scenario we might be talking about. Here, I think there's a dispute  Was he already in custody? Was it a new custodial detention that was arranged for purposes of the relationship between ICE and the Marion County Sheriff? I think there's perhaps a factual dispute about that, and we're not interested in trying to sort that out. What we're trying to fend off is when there is, regardless of the circumstances, a specific request from ICE to a local sheriff or any police official in Indiana to cooperate under the terms of the federal statute, detention, identification, arrest, detention, removal, that our statute requires that kind of cooperation. I think the statutes are fairly straightforward in that regard. The district court also decided that to permit local officials to execute a detention or arrest in that circumstance would violate the Fourth Amendment under the theory that acting under color of state law would be different from acting under color of federal law. I don't understand where that distinction comes from. I think in Arizona, it doesn't require that kind of distinction. The El Cenizo case out of the Fifth Circuit rejects that distinction. The other argument by the district court was that because this is an arrest for a civil violation or a detention for a civil violation rather than a criminal violation, that would somehow take it outside of what the Fourth Amendment permits. Again, this court has specifically acknowledged that the Fourth Amendment permits civil arrests in the context of immigration. That was, I think, the city of Peoria case that we cited in the briefs. We don't think that there is a substantial Fourth Amendment issue there, and we think that the cooperative nature of the relationship here and in the cases that we think would typically fall under these state statutes, we're talking about something initiated by the federal government, cooperated with by state and local officials, not a unilateral type situation that Arizona was targeting in terms of preemption. If there's no questions at this point, I reserve the remainder of my time. Thank you. Mr. Morgan? Oh, excuse me, Mr. Stewart. Thank you, Your Honor. May it please the Court, I'm Scott Stewart on behalf of the United States. I'd like to pick up by and go right to some issues that my friend was focusing on, the Fourth Amendment, the federal issues in this case. I want to hit those home because this is a very important case in terms of federal interests. It morphed into something quite different from where the lawsuit started as, into a judgment that very sweepingly bars and declares invalid local and state cooperation with federal immigration enforcement efforts. I want to emphasize both how that is wrong as a preemption, federal law matter, statutory matter, as well as a problem as a constitutional matter. On the preemption issue, Your Honor, the detainer mechanism, whatever could be said about some of the scenarios in the Arizona case about unilateral state action, the detainer mechanism as it currently stands is on very, very solid ground preemption-wise. The concern in Arizona, the concern animating the court's holdings in Arizona were that local officers, state officers, could be pursuing their own kind of parochial state agenda on immigration concerns that they could be detracting from the federal government's ability to speak with one voice on foreign affairs matters which are implicated by these immigration matters. The detainer mechanism ensures that you don't have any of those concerns. Detainers are simply requests from the federal government that state and local officers help with the very significant and burdensome task that is enforcing the immigration laws. They're requests for cooperation and for modest cooperation. They ask simply for notification that somebody who's already in state custody or state or local custody on local charges that the local folks give federal officers notification of release dates and if need be hold that person for a brief time so that the federal government can take custody in an orderly way. These are contemplated by federal law. Federal law in 8 U.S.C. 1357 G10 expressly allows for this sort of informal cooperation where somebody, local officers, just offer this kind of assistance. It's the kind of informal assistance that was contemplated in Arizona. A point of emphasis I'd like to say and this responds to something that my friends on the other side mentioned in their briefing is a theme that you often see in these kind of cases and this was pressed and rejected in the El Cineso case out of the Fifth Circuit is that for state and local officers to undertake these sort of detentions they need to have formal training and essentially become de facto immigration officers. That's not correct. What the 287 G mechanism as it's called, the formal training mechanism is it allows local officers after strict formal training and that sort of thing to become de facto immigration officers who although still subject to the supervision of the federal government can go and kind of do things under their own initiative. That's not what happens with these informal agreements and a way to kind of draw out the distinction here is that with these detainers you don't have a situation where a state or local officer is just sort of going out into the field and making their own off the fly judgments on how to enforce immigration law. What we're talking about here is that you have somebody who's already in state or local custody and we the federal government are simply saying hey we have probable cause to believe that this person is removable. Please just hold that person in custody for an additional little bit amount of time so that we have a chance to go pick them up. That kind of additional holding is something they're already in detention. It doesn't require any formal immigration expertise or training to continue to hold somebody on that basis. So that I think really draws out and kind of puts to bed the meat of the concerns advanced by my friends on the other side about the need for these formal agreements. If I can shift very quickly to the Fourth Amendment issues. The point here I'd emphasize Your Honor is that the district court never disputed that federal officers can detain people based on probable cause of removability. There was no dispute about that. That really should have been the end of the Fourth Amendment analysis because the Fourth Amendment it means the same thing at both the federal and state level. If it's reasonable for somebody at the federal level to do then it's reasonable for somebody under the Fourth Amendment for somebody at the state level to do or the local level to do. The only real question is that if there's a preemption problem and when you have a detainer mechanism where somebody just has the requisite request or you don't have any preemption problem once you're clear on that and once in this case it's clear that federal officers can do this you don't have any Fourth Amendment problem as well because you have the adequate probable cause stated in an administrative warrant to make the brief continued detention to help the federal government enforce immigration law. For these reasons we ask that the court vacate the judgment and I thank the panel for allowing the United States to appear here today. Thank you Stuart. Mr. Morgan. Thank you Judge Plowman. May it please the court. Before Mr. Rose speaks about the balance of the issues I want to take just a little time to focus on the injury in fact question that the county controlled question is dispositive and that it presents the most straightforward way to decide this appeal. There's no question under the main versus Taylor line of cases that had the district courts judgment actually rendered some Indiana law unenforceable that the state could show an article three injury but that's not what happened here. The state is asking the court to read into chapter 18.2 some unqualified obligation to do anything that ice might demand after some information is exchanged. Nothing in Indiana law requires that we explain in our brief reasons why we think that reading is a textual but I think the textual nature of that reading becomes really obvious when you look at chapter 18.2 as a whole. For instance section one defines governmental body in a way that extends the obligations in chapter 18.2 to entities like Marion County's board of zoning appeals in Indianapolis historic preservation commission. Now I think it's easy to imagine the General Assembly extending an information sharing obligation to those sorts of public bodies but I would suggest it's downright absurd to think that the General Assembly is requiring a board of zoning appeals to detain someone for up to 48 hours at the federal government. Let me ask you a question because that's you're defending the train wreck example. Can you identify for me how Indiana can vindicate its view, which I understand you think is wrong, but its view of the scope of its statute. Is there a mechanism for doing that? Certainly the state could bring other lawsuits that I think we could speculate about what would happen if at some point in the future the Indiana Supreme Court adopted a contrary view to the district court's view. Perhaps that could happen. At that point in time there's no question that the whether they could satisfy redressability and all the other rule 24 questions is perhaps another matter. But at that point in time they would have an article 3 injury. But the speculation about whether that might happen in the future can't do away with the irreducible constitutional law. No, I understand that but my it bears on the nature of the injury now. If there's no way for the state to vindicate its interest in its own interpretation of the law. Right, and that I think is the problem with the state's position, right? It believes that it has some article 3 right to intervene in any case where an Indiana law is applied. And there's simply no authority for that. They haven't cited a single authority for that proposition. Maine v. Taylor line of cases is clear. It's when a statute is rendered unenforceable. That didn't happen here. And there are other problems when you read 18.2 as a whole with the state's argument. For instance, as the state reads it, this unqualified duty to cooperate. There would be an obligation for the Marion County Sheriff to honor a detention request, even if the detainee provides credible information casting serious doubt on Isis conclusion that he's in the country illegally. Now the state acknowledges in their briefing that detention would fall outside the scope of the collective knowledge doctrine. But their reading of Indiana law requires it. We just think there's no reason to believe that the General Assembly imposed those sorts of far-fetched and very likely unconstitutional obligations. And on the other hand, there's every reason to believe that had the General Assembly actually intended to require detainers, I'm sorry, cooperation with detainers, it would have passed a law saying so, just like, for instance, the state of Texas did. And it would have provided the sorts of exceptions that avoid those absurd scenarios like, for instance, Texas. What if, why don't you concede the state's point? Let's just imagine that the district court did erroneously interpret the state law. In that event, would you think that there was a cognizable injury? I don't, because I think what the state's standing theory, I think it's important to keep in mind exactly what they're asking for. They're proposing a standing theory where a proposed intervener actually would have greater rights than a party to a lawsuit. Consider this scenario. Had Mr. Lopez-Aguilar actually challenged the validity of those state laws that the state is citing on appeal and sued various state officials and had the district court employed constitutional avoidance principles to save those statutes by reaching exactly the same reach that it reached here, the state wouldn't be able to appeal that judgment because it disliked the legal rationale underlying it because there are scores of cases from this court that make clear that you don't get to appeal the legal analysis underlying a district court's opinion. It's the judgment that's subject to appeal. That's why I think the question here is, does the district court's judgment render some Indiana law unenforceable? And that was the question. It's not that the district court never grappled with that. That was the question the district court grappled with on the intervention motion. And that's why we're here asking the court to affirm that part of the district judge's decision, the post-judgment order, but then to dismiss the appeal from the final judgment for lack of jurisdiction. And I think the final point, if I may, is this notion that Indiana law doesn't require honoring detainers. And that's the crucial distinction between this case and the Fifth Circuit's decision in the city of El Cenizo, the case the state very badly wants to make this one look like. Texas law requires local officials to honor detainers. Indiana law doesn't. And the court doesn't have to take my word for it or the district court's word for it, because if the state really believed that an Indiana law had actually been rendered unenforceable, it would have intervened as a right under 28 U.S.C. Section 2403B and Rule 2481. It didn't do that for good reason. There's no Indiana law requiring detentions. If the court has no other questions at this time, again, we would ask that the post-judgment order be affirmed and that the state's appeal from the final judgment be dismissed for lack of reception. Thank you. Thank you, Mr. Morgan. Mr. Rose? Thank you. May it please the court. I'm reluctant to part ways with the sheriff and his attorney here, but I think that the Article III question presented by this case is not whether the district court properly interpreted Indiana law. It is whether the district court was interpreting the law or whether it was invalidating it. And the reason that that's the operative question is that in discussing states' intervention rights, the Supreme Court has drawn a bright-line distinction between cases that quote-unquote draw in question the validity of a statute and those that simply require a statute's construction. Only those that challenge a statute's actual validity entitle a state to intervene. But the district court in this case made abundantly clear, and I think it has to be taken at its word, that it was not assailing the validity of Indiana law. It was simply interpreting it. And in fact, until General Fisher stood here today, I don't think the state at any point in this litigation has said that it believes that it was entitled to the notice and intervention rights under Rule 5.1 and Section 2403. As we noted in our briefing, if the state's argument that it is entitled to intervene, that presumably any state is entitled to intervene every time it believes that one of its statutes has been misinterpreted, if that were accepted, then governmental intervention rights are virtually limitless. I do want to address the question as to what the state can do if the district court was wrong. If the Indiana Supreme Court came out tomorrow and adopted the state's view of Indiana law, as General Fisher notes, any person domiciled in Indiana has a right, I think, to bring an action against the Marion County Sheriff's Department challenging the policy that forms the basis for this case, I guess. That's the sheriff's problem. If the Indiana Supreme Court came out with a contrary view of Indiana law to the view that the district court relied on below, that is the perfect fodder for a Rule 60 motion under RUFO that the sheriff could file and perhaps would be obligated to file. At that point, in responding to that motion, we would have the opportunity to either consent to the vacature or the amendment of the decree or to challenge the law as interpreted by the Indiana Supreme Court under our federal theories. If we actually challenge the law at that point, then I think that's when the state finally gets its notice under Rule 5.1 or 24.03 and is allowed to defend the law itself. But until that point, what we have here is the district court interpreting Indiana law in a manner that the state's attorneys happen to disfavor and there's no precedent out there that suggests that that is enough to cause the state injury in fact. Injury in fact is also not the state's only jurisdictional problem in this case. As we noted in our briefing, this case falls squarely in line with the Kendall-Jackson and Thousand Friends of Wisconsin cases that also found an insurmountable redressability problem when a party sought to appeal an injunction issued exclusively against someone else. The state responds to this in its reply brief by saying that injury is redressable if the court simply issues a favorable ruling. That is precisely the argument that was raised and rejected in Kendall-Jackson. That is an injury in fact argument. It is not a redressability argument. And the argument does not begin to address the fundamental jurisdictional problem there. We think that this appeal is obviously properly resolved on the question about the state's entitlement to intervene in the first place. Obviously the parties have spent a significant amount of ink briefing complicated issues of immigration law that may properly be before the court at some other time. I don't think this is the case to decide them. As Mr. Morgan points out we obviously disagree with the city of El Cenizo case in various respects. What that case does make abundantly clear though is that when states want to mandate that their localities comply with ICE detainers they know how to draft that law. The state of Texas had both a law similar to what we have in this case and a law that independently said you have to comply with ICE detainers. If the state of Indiana wanted to draft such a law they certainly could do so. Our federal argument is notwithstanding. They have not done so and for the reasons noted by the district court and noted in our briefing I think they have misinterpreted the Indiana law as that issue in this case. Thank you very much. Thank you Mr. Rose. General Fisher. If an Indiana court were to hold that the Marion County Sheriff is required to abide by the state statutes that we say require cooperation with ICE detainers and yet that Sheriff's Office were still encumbered by the injunction issued in this case by way of consent decree that is not simply a problem for the Marion County Sheriff. That is a problem for the people of Indiana. That is a problem for all citizens in Indiana. This I think helps to encapsulate exactly the high level problem we see here which is that we have a state statute that a local government has seen fit to enter into a consent decree blessed by a district judge to curtail the full breadth of that statute. This is exactly the kind of scenario where the state needs to be able to intervene to defend its interests. Now whether the statute is invalidated on its face or simply trimmed by reference to a constitutional analysis I think is irrelevant particularly for purposes of Article 3 standing. How can it be that Article 3 permits defense of a statute when it's a constitutional claim by way of what the complaint says versus when the statute is being in a way that would just as well have been a constitutional determination in terms of result. I don't see that there's any distinction between the two that rises to any kind of Article 3 difference. Now the city says well you really can just avoid the merits by addressing standing. But to address standing the city would require you to address the merits which of course is not the way this is supposed to work. You're supposed to decide is there an Article 3 interest first then decide the merits of the case. So I don't think that that method of analysis actually helps very much in this case because the merits themselves I think you can't get to until you address standing which on its face I think is just a matter of straightforward application of ordinary sovereign interest principles. Now we did raise actually the right to notice under 2403 twice. We raised it in the blue brief at page 25. We raised it in the reply brief at page 9. So I don't think that's any kind of new issue that has suddenly come up. Also I want to comment that with respect to the Kendall-Jackson case and the other cases that talk about not granting relief where one of the parties encumbered by an injunction is not on appeal. Those would I think if read that broadly would undermine the Flying J case which is our principal case for how a party is supposed to get in front of the Court of Appeals by way of intervention post-judgment. After judgment comes out even if no one else is appealing there is this mechanism to permit intervention for purposes of appeal and if Kendall-Jackson and the other cases were interpreted as broadly as my friends suggest Flying J there would be no point. There would never be a scenario where that could apply. I think the distinction is what can we reasonably expect in the wake of a favorable Court of Appeals decision. Would things change or would everything stay the same simply because the parties could just voluntarily decide to do what they've already agreed to do. Here no matter what else we might see in other cases it is manifest that things would change because the Marion County Sheriff is required by law to comply with Indiana law and cooperate with ICE detainers and there is a very specific enforcement mechanism in place to ensure that that happens. So I don't think there could be any question but that both Article III standing and redressability requirements are met here and I would urge the court to vacate the injunction below based on both the state standing and the reconcilability of the judgment with state law, with preemption law and with the Fourth Amendment. Thank you very much.